IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TINA L. OTTS, | ) | |
| PLAINTIFF, | ) | |
| VS. | ) | 2:08-cv-41-JHH |
| MICHAEL J. ASTRUE, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | |
| DEFENDANT. | | |

## MEMORANDUM OF DECISION

Plaintiff Tina L. Otts brings this action pursuant to sections 205(g) and 1631(c) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act and her application for supplemental insurance benefits under Title XVI of the Social Security Act.[1] For the reasons set forth below, the decision

---

[1] Generally, the legal standards are the same regardless of whether a claimant seeks disability insurance benefits (DIB) or supplemental security income (SSI). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions. See Borden v. Astrue, 494 F. Supp.2d 1278, 1280 n.1 (N.D. Ala. 2007).

denying benefits is due to be remanded for further consideration by the administrative law judge.

## I. PROCEDURAL HISTORY

Plaintiff filed her application for disability insurance benefits and her application for supplemental security income on April 27, 2005, alleging a disability onset date of October 19, 2004. These applications were denied initially and also upon reconsideration. Plaintiff then requested and received a hearing before an administrative law judge (ALJ). The hearing was held on June 27, 2007 in Birmingham, Alabama. In his July 13, 2007 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act and thus ineligible for disability insurance benefits and supplemental security income. (Tr. 11, 18.) After the Appeals Council denied plaintiff's request for review of the decision of the ALJ, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review.

## II. ADMINISTRATIVE RECORD

At the time of the hearing, plaintiff was 36 years old. (Tr. 250.) She left school in the seventh grade, at the age of 16, and can read, write and perform simple mathematics. (Tr. 250-51.) Plaintiff had previously worked as a school bus driver, cashier and stocker. (Tr. 65.) Plaintiff was in a severe automobile

accident in October 2004, in which her left femur was crushed and the bones below her knee were shattered. (Tr. 252.) She described swelling and excruciating pain in her leg and the inability to bear full weight on the injured leg. (Tr. 254-55.) Plaintiff testified that her knee is "stuck," in that it does not straighten completely and her foot does not touch the ground, forcing her to walk on her tiptoe. (Tr. 257, 263.) Her knee also "catches" which causes her to fall to the floor in severe pain. (Tr. 256.) She is unable to walk on rough surfaces and cannot drive, nor can she ride the bus because of difficulties getting on the bus. (Tr. 260.) Plaintiff described having difficulty sitting, walking or standing for more than brief periods of time because of pain and swelling, and she has to recline for periods of time, and sometime for several hours a day, to get relief. (Tr. 257, 259, 262.) Although her orthopedic doctor told her she needed a knee replacement, she is too young for the procedure. (Tr. 255-56.) According to plaintiff, due to these injuries, she has been unable to engage in substantial gainful activity since October 19, 2004. (Tr. 43, 238.)

The medical records show that on October 19, 2004, plaintiff suffered a "severely comminuted fracture of the left supracoondylar femur . . . ." (Tr. 97.) On October 21, 2004, plaintiff underwent surgery that included the placement of plates and screws to repair the femur. (Tr. 94-95, 99-100.) Plaintiff's recovery

was impeded by the inability to regain adequate range of motion in her knee. She developed a flexion contraction and underwent manipulation of the knee under anaesthesia on March 7, 2005. (Tr. 132.) She continued to experience pain and the inability to achieve full range of motion and underwent a second manipulation under anesthesia on August 1, 2005. (Tr. 128.) As of October 4, 2005, almost a year after her accident, plaintiff's doctor noted the continued limited range of motion. (Tr. 177.) On February 23, 2006, plaintiff underwent the removal of "painful hardware" in her leg. (Tr. 187.) Then, on November 26, 2006, over two years after the accident, x-rays of plaintiff's knee revealed post traumatic arthritis. (Tr. 174.) Her doctor's notes state that "the best thing is a total knee" replacement. (Id.)

On October 10, 2005, plaintiff underwent a consultative medical examination. Consulting physician Dr. John B. Waits found marked abnormalities in the plaintiff's lower left extremity. (Tr. 170-73.) He observed abnormal strength, muscle atrophy, abnormal muscle tone, an abnormal gait, and a knee joint that was severely locked in extension. (Id.) Dr. Waits opined that plaintiff had an "obvious deformity of the left knee" which seemed to be limiting her daily living activities. (Tr. 172.) He noted that plaintiff "struggled to walk" and commented that although she should be able to sit without difficulty, she would have trouble

with prolonged walking, lifting, carrying items, handling objects, and traveling because of her problems getting in and out of a vehicle. (Tr. 173.) Dr. Waits opined that "[s]he would most likely qualify for a sit-down job." (Id.)

A vocational expert testified at the hearing. The ALJ asked the vocational expert to consider a hypothetical individual, with the plaintiff's age, education and past relevant work experience, who could do sedentary work with a sit/stand option (Tr. 269.) He then asked if there were jobs in the local or national economy that this hypothetical individual could perform. (Id.) The vocational expert responded that this individual could perform the job of a cashier, inspection or packaging in a paper or rubber goods, hosiery jobs, or as a receptionist who primarily answered telephone calls. (Id.) The vocational expert testified, however, that if that same individual had the amount of pain described by plaintiff and had to take the measures taken by plaintiff to keep the swelling of her leg down, there would be no work available to such a person. (Tr. 270.)

### III. THE DECISION OF THE ALJ

The ALJ determined that plaintiff was not disabled under sections 216(i), 223(d) and 1614(a)(1)(A) of the Social Security Act. (Tr. 18.) More specifically, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 19, 2004. (Tr. 13.) He found that she suffered from "status post lower

5

limb fracture" which is a severe impairment, but that this impairment did not meet of equal the criteria of listed impairment 1.11. (Tr. 13-14.)

The ALJ then addressed whether the plaintiff retained the residual functional capacity to perform either her past relevant work or some lesser level of work activity. In making this determination, the ALJ rejected plaintiff's testimony regarding her symptoms, pain, and functional limitations. (Tr. 14-16.) The ALJ found that plaintiff had the residual functional capacity to perform sedentary work with a sit/stand option. (Tr. 14.) The ALJ concluded that, although plaintiff is unable to perform her past relevant work, there are a significant number of jobs that exist that the claimant could perform. (Tr. 17.) As such, the ALJ determined that plaintiff was not under a disability at any time through the date of his decision. (Id.)

## IV. STANDARD OF REVIEW

The only issues before this court are whether the record reveals substantial evidence to sustain the decision of the ALJ, see 42 U.S.C. § 405(g); Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005), and whether the correct legal standards were applied. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). Sections 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by

"substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. See id. (citing Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence. Dyer, 395 F.3d at 1210 (citing Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). "It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Martin, 894 F.2d at 1529 (quoting Bloodsworth, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). While the court acknowledges that judicial review of the findings of the ALJ is limited in scope, the court also notes that review "does not yield automatic affirmance." Lamb, 847 F.2d at 701.

## V. APPLICABLE SUBSTANTIVE LAW

"[T]he ultimate burden of proving disability is on the claimant." " Freeman

7

v. Schweiker, 681 F.2d 727, 729 (11th Cir. 1982) (citations omitted). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); see also 20 C.F.R. § 416.905(a).

Determination of disability under the Social Security Act requires a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work

experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates.

Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work. See Gibson v. Heckler, 762 F.2d 1516, 1518 (11th Cir. 1985). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." 20 C.F.R. §§ 416.920(a)(4)(v) and 416.920(g).

## VI. ANALYSIS

The plaintiff seeks to have the decision of the ALJ, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. Plaintiff makes two arguments for reversal and/or remand. First, plaintiff contends that "[t]he ALJ failed to properly evaluate whether the claimant's impairment met

9

or equaled the listing for fracture of a lower extremity, listing 1.06, and listing 1.02 for major disfunction of a joint." (Pl. Mem. at 8-10.) Second, plaintiff contends that the ALJ failed to properly evaluate plaintiff's subjective complaints of pain. (Id. at 10-13.)

The ALJ purportedly applied "section 1.11" in assessing plaintiff's severe femur fracture impairment at step three of the analytical process. (Tr. 13-14); see also 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2001) (Listing of Impairments). The ALJ stated:

> The claimant's impairments do not meet the criteria of [listing] section 1.11 dealing with fracture of the femur. As evidence reveals, though the claimant has chronic pain in her left leg, x-rays show good union of the fracture, the claimant is weight bearing and she has full range of motion and muscle strength in that extremity.

(Tr. 13-14.)

Listing 1.11, however, is inapposite because it is the former listing applicable to femur fractures. As of February 19, 2002, listing 1.11 became ineffective and superseded by listing 1.06 for femur fractures. See Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed.Reg. 58,010, 58,010-011, 58,019 (Nov. 19, 2001); see also 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2002) (setting forth the redesignated listing for femur fractures, Listing 1.06, in the Listing of Impairments). Therefore, the ALJ applied a listing

to plaintiff's impairment that was no longer in effect.

Although he applied an ineffective listing, if the old and new listings are substantively similar, remand is not necessarily warranted. Both listings require that two elements be satisfied. A comparison of the old and new listing reveals that the first criterion is substantially similar -- both require "solid union not evident" and "not clinically solid." Compare 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2001) with 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2002). The second criterion, however, is materially changed. The old, superceded listing required "return to full weight-bearing status did not occur or is not expected to occur within 12 months of onset." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2001). This requirement was replaced in listing 1.06 by the requirement of the "[i]nability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset."[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2002). Section 1.002B defines what it meant by "inability to ambulate effectively."[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, at Section 1.00B2b (2002).

---

[2] The musculoskeletal listings were revised specifically to "emphasize the impact of the impairment(s) on a person's ability to function, and thereby to perform gainful activity, [by] clarify[ing] the degree of musculoskeletal functional limitations required to establish listing-level severity . . . ." Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed.Reg. 58,010, 58,012 (Nov. 19, 2001).

[3] Section 1.00B2b provides, in relevant part, the following definition:
    (1) Definition. Inability to ambulate effectively means an extreme limitation of the

Because the ALJ applied the old listing, he obviously did not evaluate the medical evidence and other evidence of record to determine whether or not plaintiff could effectively ambulate, as required by the second step of listing 1.06. However because both listings require that there not be "solid union" of the fracture, and because plaintiff's impairment must meet both elements of the listing, a finding by the ALJ that plaintiff's impairment reached solid union, supported by substantial evidence, suffices. Here, the ALJ found that there was "good union of the fracture" and that "x-rays taken . . . showed full union of the fracture." (Tr. 13-14.) Therefore, if the finding of solid union is supported by substantial evidence, remand may not be necessary, even though the ALJ did not apply the second element of listing 1.06.

---

ability to walk; i.e. an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities . . . (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living ... examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

The finding of full union, however, is not supported by substantial evidence. In making the finding of "full union," the ALJ cited to one piece of evidence -- an x-ray taken on January 31, 2006. (Tr. 14.) The notes from that x-ray, however, do not support the ALJ's finding of full union. Instead, the "findings" section states: "[t]here is bridging callus <u>partial</u> radiographic union of the distal metadiaphysis fracture of the femur . . . ." (Tr. 189) (emphasis added). Partial is certainly different from full. Moreover, two later x-rays showed "delayed union," which is also different from full union. An x-ray taken on February 23, 2006, after the plate was removed, noted "[p]ersistent lucency at the healing fracture site is suggestive of delayed union" (tr. 187), and an x-ray taken on May 16, 2006 "show[ed] changes suggestive of delayed union." (Tr. 183.) The totality of this evidence is not "adequate to support [the] conclusion" of solid or full union, <u>Martin</u>, 894 F.2d at 1529 (citations omitted), and the finding of full union by the ALJ is not supported by substantial evidence.

Because the finding of full union is not supported by substantial evidence and the ALJ did not evaluate the evidence in light of the second step of listing 1.06, this case must be remanded. Upon remand, the ALJ should develop the record in regard to the second element of listing 1.06 and evaluate the medical and non-medical evidence to determine whether plaintiff can effectively ambulate, as

defined by section 1.002B.

## VI. CONCLUSION

The ALJ reached his decision through the application of incorrect legal standards when he applied the wrong listing. In addition, his decision was based on a finding that was not supported by substantial evidence. A separate order of remand will be entered.

DONE this the 15th day of September, 2008.

_____
SENIOR UNITED STATES DISTRICT JUDGE